IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARY SNOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV0070 |
| | ) | |
| KHOSROW KHAZENI, CARDINAL | ) | |
| CROSSING SUBWAY, INC., STRICKLAND | ) | |
| RIDGE SUBWAY, INC., and ALAMANCE | ) | |
| SUBWAY, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

Tilley, Senior District Judge

This matter is before the Court on Defendants' Motion for Summary Judgment. [Doc. # 12.] On January 29, 2008, Plaintiff Mary Snow filed an action against Defendants Khosrow Khazeni, Cardinal Crossing Subway, Inc., Strickland Ridge Subway, Inc., and Alamance Subway, Inc. (collectively, "Defendants") alleging unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. For the reasons stated below, Defendants' motion for summary judgment is denied in part.

I.

The facts, viewed in the light most favorable to the Plaintiff, are as follows. In July 2005, Mary Snow responded to an advertisement seeking employees to

work at Subway, a national sandwich chain. Khosrow Khazeni answered Ms. Snow's phone call and directed her to submit an application at Cardinal Crossing Subway, Inc. ("Cardinal Crossing"), which she did. Mahnaz Nobakht, manager of both Cardinal Crossing and Strickland Ridge Subway, Inc. ("Strickland") informed Ms. Snow that more hours were available if Ms. Snow could work at both Cardinal Crossing and Strickland. Ms. Snow agreed to work at both locations.

Cardinal Crossing and Strickland, although separate corporations, are both "owned" by Mr. Khazeni.[1] Mr. Khazeni also owns several other Subway restaurants, including Defendant Alamance Subway, Inc. ("Alamance"), all of which operate under separate corporate identities. None of the Defendant corporations generally employs fifteen or more people a week.

In October 2005, Ms. Snow brought Ms. Nobakht a letter from her counselor requesting that Ms. Snow be allowed to work at only one location and that she be given a regular schedule because the lack of a stable schedule exacerbated Ms. Snow's Panic and Anxiety Disorders. Ms. Nobakht arranged for Ms. Snow to work only at Cardinal Crossing. However, Ms. Snow did not feel that Ms. Nobakht made appropriate efforts to ensure Ms. Snow had both sufficient hours and a regular schedule. Ms. Snow wrote Ms. Nobakht several notes in which she requested a specific schedule and complained that Ms. Nobakht did not

---

[1] Little evidence has been submitted concerning the ownership and structure of the Defendant corporations. However, Defendants identify Mr. Khazeni as the "owner" of each corporation in their interrogatories.

2

give her enough hours.  Ms. Snow requested that Ms. Nobakht share at least some of the notes with Mr. Khazeni.

On Friday, December 16, 2005, Ms. Snow filed a complaint against Cardinal Crossing with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on religion, national origin, retaliation and disability.  When Ms. Snow returned to work on Monday, December 19, 2005, Ms. Nobakht issued her a written warning, which stated, "never come late don't complain to other employee's about other employee's hour and comparing yourself to others follow the rules, wear complete uniform, try to be faster on the line, for example today you didn't have Sbway Shirt."  The warning noted that Ms. Snow had been orally warned more than ten times between August 2005 and December 2005.  Ms. Snow refused to sign the warning and does not recall any prior warnings.

Later in Ms. Snow's shift on the same day, Mr. Khazeni arrived at Cardinal Crossing.  Mr. Khazeni began waiving papers in the air and yelling that Ms. Snow was trying to put him in jail, that Ms. Snow was trying to put him out of business and that he had lawyers who would bury Ms. Snow.  At some point, Mr. Khazeni grabbed the collar of Ms. Snow's thermal undershirt and told her she was a mess.  Ms. Snow claims that she had accidentally spilled marinara sauce on the shirt earlier in her shift.  Mr. Khazeni then told Ms. Snow that she could no longer work with Ms. Nobakht and that she was being transferred to Alamance.

Mr. Khazeni arranged to have Ms. Snow meet him at Alamance the next

3

day, December 20, 2005, so Ms. Snow could meet the manager. The Alamance manager told Ms. Snow to call Alamance the following day to receive her shift assignment. When Ms. Snow called Alamance the next day, an employee informed her that she was not on the work schedule. The employee told Ms. Snow to call Mr. Khazeni directly because he had personally created the schedule. Over the next week and a half, Ms. Snow attempted to contact Mr. Khazeni several times. When Ms. Snow finally spoke with Mr. Khazeni, Mr. Khazeni told her she was fired.

The Defendants' version of the facts is distinctly different from Plaintiff's version. According to Defendants, Mr. Khazeni went to Cardinal Crossing to alert Ms. Snow of her transfer to Alamance. When Mr. Khazeni arrived at Cardinal Crossing, he noticed that Ms. Snow was not in her Subway uniform and had blood on her shirt. Based on these observations, Mr. Khazeni directed Ms. Snow to leave and to report to Alamance the next day. After meeting the Alamance manager on December 21, 2005, Ms. Snow never reported for work. Ms. Snow called Mr. Khazeni in January to see if she could work at Alamance, but Mr. Khazeni informed her that because she did not report for work, she had been replaced.

## II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

4

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. Anderson, 477 U.S. at 248; Cox, 249 F.3d at 299. Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson, 477 U.S. 242, 249 (1986). In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

On June 18, 2009, Plaintiff moved to amend the complaint to include a claim for piercing the corporate veil of the Defendant corporations to reach Mr. Khazeni in his individual capacity. Ms. Snow's motion was granted, and she was given ninety days to conduct additional discovery. Because of this new claim, ruling on the motion for summary judgment as to Mr. Khazeni is deferred until the time of any further summary judgment motion. Defendants may renew their motion for summary judgment as to Mr. Khazeni after the close of discovery.

III.

The first issue is whether any of the Defendant corporations qualifies as an "employer" under Title VII. Under 42 U.S.C. § 2000e(b), an employer is defined as

5

"a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Employers with less than fifteen employees are considered exempt from Title VII's requirements. Depaoli v. Vacation Sales Associates, L.L.C., 489 F.3d 615, 622 (4th Cir. 2007). Because Title VII does not apply to all employers, "the threshold number of employees for application of Title VII is an element of a plaintiff's claim." Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006). Thus, summary judgment is appropriate if, as a matter of law, one or all of the Defendants is not an employer under Title VII.

The evidence shows that none of the Defendant corporations, standing alone, meet the definition of employer as none employed fifteen people for the requisite period of time. Plaintiff argues that the Defendant corporations should be considered one employer for Title VII purposes under the integrated employer theory, also known as the "single employer" doctrine. If the Defendant corporations are considered a single employer for purposes of Plaintiff's claims, the evidence indicates that the collective number of employees is greater than fifteen for the requisite period, making Title VII potentially applicable under this theory.

Under the "integrated employer" theory, several entities "may be considered so interrelated that they constitute a single employer." Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999). The Fourth Circuit has not specifically

6

adopted a test to apply in these situations. Johnson v. Flower Indus., Inc., 814 F.2d 978, 981 (4th Cir. 1987). As the Fourth Circuit explained in Hukill, however, the "'integrated employer' test instructs a court to determine '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination.'" Hukill, 192 F.3d at 444 (quoting Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983)). Factors such as who hired and fired employees, whether employees were routinely shifted between companies, and who supervised daily operations at each company are considered when determining whether companies are sufficiently interrelated as to be a single entity. Johnson, 814 F.2d at 981.

Sufficient evidence exists for a jury to find that the three Defendant corporations are so interrelated that they constitute a single employer. First, Mr. Khazeni, as owner of each corporation, exercised significant control over the hiring and firing of employees in his various restaurants. Mr. Khazeni directed Ms. Snow to which Subway she should submit her application, "hired" Ms. Snow at Alamance by transferring her from Cardinal Crossing, and terminated Ms. Snow's employment with Alamance Subway, Inc. Although evidence indicates that Ms. Nobakht also played a role in hiring Ms. Snow initially, Mr. Khazeni played a significant role in Ms. Snow's employment and subsequent termination.

Second, evidence exists that employees were routinely shifted between Mr. Khazeni's various restaurants. Although Ms. Snow applied to Cardinal Crossing,

7

she was told she could pick up more hours if she was willing to work at Cardinal Crossing and Strickland, both of which were managed by Mahnaz Nobakht. Additionally, Mr. Khazeni keeps a compiled list of all employees at his various Subway corporations, which indicates that several employees also work at more than one location.  Finally, when Mr. Khazeni determined that Ms. Snow should not work at Strickland and Cardinal Crossing, he simply shifted her to Alamance.

Third, there is evidence that Mr. Khazeni oversaw at least some of the daily operations of the Defendant corporations.  Evidence indicates that Mr. Khazeni disciplined employees, wrote out weekly schedules, and filled out documentation on behalf of the restaurants. That Mr. Khazeni treated the Defendant corporations as a single entity can also been seen on a Wage Verification Form Mr. Khazeni filled out for the Guilford County Department of Social Services on August 26, 2005.  Although Ms. Snow worked at both Strickland and Cardinal Crossing during August 2005, Mr. Khazeni only listed "Subway" in the employer field and gave the address of Cardinal Crossing.

Added together, the Defendant corporations do employ more than fifteen employees for at least twenty weeks during the year. Ms. Snow has produced evidence that Mr. Khazeni exercises control over the daily operations and employment decisions, shifts workers from one restaurant to another, and treats the Defendant corporations as an integrated entity. A reasonable jury could find on this evidence that the Defendant corporations were so interrelated that they

8

constitute a single employer. Thus, Ms. Snow has shown that a genuine issue of material fact exists as to whether the Defendant corporations can be considered employers under Title VII.

IV.

Additionally, a genuine issue of material fact exists as to whether the Defendants unlawfully retaliated against Ms. Snow for filing a claim with the EEOC. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). A plaintiff can meet her burden by providing "direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." Evans v. Techs. Apps. & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). Although Ms. Snow has produced enough direct and circumstantial evidence of discrimination to survive summary judgment, Ms. Snow argues that she also satisfies the burden-shifting scheme of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To establish a prima facie case of retaliation under the McDonnell Douglas scheme, "a plaintiff must prove (1) that she engaged in a protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal connection between the first two elements." Dowe v. Total Action Against Poverty, 145 F.3d 653, 656 (4th Cir.1998).

9

Ms. Snow engaged in a protected activity when she filed a complaint with the EEOC on December 16, 2005. See id. (finding that the filing of a complaint with the EEOC is a protected activity). Plaintiff alleges three adverse actions taken against her: (1) a written performance warning issued December 19, 2005; (2) hostile comments from Mr. Khazeni on December 19, 2005; and (3) termination on or around January 2, 2006. Termination qualifies as an adverse employment action. Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007) (holding that termination is an adverse action). Furthermore, an action is materially adverse if "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). A reasonable worker might have been dissuaded from filing a charge of discrimination if she had known she would face a written warning or a verbal and physical confrontation with the owner of the restaurant. Therefore, Plaintiff can meet the first two elements of her prima facie case.

The Fourth Circuit has held that "very little evidence of a causal connection is required to establish a prima facie case" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a prima facie retaliation case. Tinsley v. First Union Nat. Bank, 155 F.3d 435, 443 (4th Cir. 1998). Compare Williams v. Cerberonics, Inc., 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the

10

causation element of the prima facie case of retaliation) with Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998) (finding that thirteen month interval between plaintiff's initial charge and termination too long to establish causation without additional evidence of retaliation). The adverse actions alleged by Plaintiff took place over a period of less than three weeks after she filed her initial complaint with the EEOC. These actions are sufficiently close in time to Ms. Snow's EEOC complaint for a reasonable jury to conclude that there is a causal connection between the two. Thus, Plaintiff has made her prima facie case for retaliation.

If an employee makes out a prima facie case of retaliation, as is the case here, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse action. Holland, 487 F.3d at 218. If an employer meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 285 (4th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

Here, Defendants have articulated a legitimate non-retaliatory reason for the alleged adverse actions. First, Defendants state that Ms. Snow was issued a written warning because of complaints received at the store and her failure to respond to previous oral warnings. They also state that Mr. Khazeni sent Ms. Snow home December 19, 2005, because she was out of uniform and had blood

11

on her collar.  Finally, Defendants state that Ms. Snow was ultimately terminated because she did not report for work at Alamance.

Ms. Snow, however, presents sufficient evidence for a jury to determine that Defendants' version of facts is different from what actually transpired and that its stated reasons were not the true reasons for the adverse actions taken against her but were merely a pretext.  Mr. Khazeni's words to Ms. Snow on December 19, 2005, including that he had lawyers who would bury her and that he believed Ms. Snow was trying to put him out of business, provide a different explanation for the reprimand and termination of Ms. Snow.  Additionally, Ms. Snow denies ever receiving an oral warning and presents evidence that on December 19, 2005, she was properly attired and did not have blood on her collar.  Finally, while Defendant states that Ms. Snow did not show up to work at Alamance, Ms. Snow claims that she made numerous attempts to report for work at the proper time.  She alleges that Mr. Khazeni willfully ignored her requests and, after some time had passed, terminated her.  Ms. Snow's allegations, if determined by a jury to be credible, would support a verdict in her favor.  Therefore, a genuine issue of material fact exists, and summary judgment must be denied as to all three Defendant corporations.

V.

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. # 12] is DENIED as to Cardinal Crossing Subway, Inc., Strickland Ridge Subway,

12

Inc., and Alamance Subway. Inc.

This, the day of June 19th, 2009.

      /s/ N. Carlton Tilley, Jr.
Senior United States District Judge